**MEVORAH et al. v. BOWLES, Price Administrator.**

**No. 227.**

United States Emergency Court of Appeals.

Heard at New York City Aug. 16, 1945.

Nov. 13, 1945.

Archibald Palmer, of New York City, for complainants.

Jacob D. Hyman, Associate Gen. Counsel of Office of Price Administration, of Washington, D. C. (Richard H. Field, Gen. Counsel, Nathaniel L. Nathanson, Associate Gen. Counsel, and Lester N. Salwin and Samuel M. Singer, Attys., all of the Office of Price Administration, all of Washington, D. C., on the brief), for respondent.

Before MARIS, Chief Judge, and McALLISTER and LINDLEY, Judges.

McALLISTER, Judge.

The Fitwell Garment Company, hereafter referred to as complainant, is a partnership composed of Isidore C. Mevorah, Dora Mevorah, Haim J. Mevorah, and Hyman S. Mevorah. It manufactures women's outerwear garments, and carries on its business in New York City. Since the adoption of price control measures, it has been subject to Revised Maximum Price Regulation No. 287, and amendments thereto.

Under the Regulation, different kinds of garments, such as dresses and blouses, are considered under different "categories"; and no manufacturer may sell garments of any category at a higher price than the highest "selling price line," established for that category, pursuant to the Regulation.

"Selling price line" is defined in Section 7(a) of the Regulation, as the price at which a particular style of garment was offered by the seller to his general trade, on the occasion of the first cutting, provided that at least 5% of the total number cut was actually delivered at such price. However, as stated in the Regulation, "sample sales or accommodation sales shall not be considered as establishing a selling price line" [Section 7(a)].

In order to establish maximum prices, the Regulation provides that each manufacturer file a pricing chart. In this chart, it is required to set forth "selling price lines" of the various categories of garments which it manufactures and sells.

This case involves prices listed in a Spring Pricing Chart; and it is provided by the Regulation that no manufacturer may sell or deliver during the spring and summer season, any garment in a given category at a price higher than the highest price at which it delivered any garment in that category during March 1942.

Provisions of the Regulation enable a manufacturer to correct an incorrect pricing chart filed by it, as well as to file supplemental charts adding any selling price lines not originally listed, at which it actually delivered garments of the given category, during March 1942 [Section 14 (b)].

When a manufacturer wishes to add a new category of garments which it has not previously fabricated, the Regulation provides for an automatic pricing method for such garments. For instance, if $3.50 is the highest price line in a manufacturer's category of women's dresses, and such manufacturer desires to make blouses which it has not previously manufactured, the highest price line for such blouses is automatically priced at $1.31¼ if made of cotton fabric, and $1.87½, if made of other fabrics.

In this case, complainant manufactured women's dresses. On January 8, 1943, it filed its original Spring Pricing Chart, listing $3.50 as its highest price line in the category of women's dresses. The next year, in March 1944, complainant again filed its Chart, listing $3.50 as the highest price line for women's dresses. In neither of these charts was there any mention of the category of women's blouses. But on August 15, 1944, complainant filed with the Regional Administrator of its region, an application requesting that the original pricing chart be corrected to include a selling price line for blouses.

Under the method for automatically pricing garments of a new category number, complainant qualified for the highest price line for blouses of $1.31¼ for blouses made of cotton fabric, and $1.87½ for blouses made of other fabrics.

However, complainant asked that its original chart be corrected to include a selling price line for blouses of $2.65. The right to such a selling price line for blouses was based upon the fact that during March 1942, complainant had cut, manufactured, and sold, 18 blouses of the $2.65 price line, of which 11 were delivered to S. Mislar, at $2.65 each. The two invoices evidencing the sales did not describe the garments as blouses, but as "samples." Complainant has never manufactured blouses since the above date, and there is no evidence in the record that it had manufactured any before that time.

Complainant's application for the selling price above mentioned, was denied by the Regional Administrator, and when it filed protest, the Administrator issued Notice of Consideration before a Board of Review, where oral argument was presented. Thereafter the Board of Review recommended denial of the protest, and the Administrator, after consideration of the record and the report and recommendations of the Board of Review, entered an order of denial of protest, whereupon the complaint before us was filed.

■ The question presented in this proceeding is whether the Administrator's determination that complainant had failed to establish that it was entitled to amend its pricing chart, under the applicable provisions of the Regulation, was arbitrary and capricious.

As provided by Section 7(a) of the Regulation, a selling price line means the price at which a manufacturer first offered for sale to his general trade a style of garment on the occasion of its first cutting. The only evidence in this case with respect to an offering for sale is that the purchaser, S. Mislar, bought 11 of the blouses, out of a total of 18 manufactured—and that he bought them in two lots, one of 4 blouses on March 6, 1942, and the other of 7 blouses, on March 10, 1942. The invoice of March 6 to Mislar, which was written up by complainant, described the garments sold as "4 samples", and shows them to have been "taken." The invoice of March 10 describes the garments sold as "7 samples selected", and as also having been "taken". The remaining 7 blouses out of the 18 which were manufactured are not accounted for. The foregoing is the only evidence of offer of sale of the blouses, that appears in the record.

It seems that the plain intent of Section 7(a) of the Regulation requiring the listing of price lines in the manufacturer's pricing charts was to reflect, in establishing selling price lines, the manufacturer's characteristic operations, and to exclude atypical, special, or accommodation sales therefrom.

From the evidence before us, it cannot be said that there was any sale reflecting the characteristic operations of complainant that could be considered in establishing a selling price line for blouses which it manufactured and sold. There was no evidence of an offer of the blouses in question for sale to the complainant's general trade, as is required to be proved to support complainant's contention. Offers made to a

single individual, without more, do not qualify them as offers for sale for the purpose of establishing a "selling price line" under Section 7(a) of the Regulation. Thus, the prices at which the blouses were offered to Mislar, cannot, under the Regulation, be taken as a factor in determining a selling price line for such garments.

Moreover, the very language used by complainant in its invoices, describing the garments sold to Mislar as "samples", and "samples selected", is sufficient—and especially so in view of the other circumstances in the case—to sustain the conclusion of the Administrator that the sales were sample sales, and, as such, under Section 7(a) of the Regulation, were not entitled to be considered in establishing a selling price line.

■ The small number of garments cut and manufactured, their designation as samples, and the evidence of offer and sale to only a single individual,—these circumstances compel the conclusion that the Administrator's refusal to grant complainant's application, was neither arbitrary nor capricious. Because of the foregoing determination, it is unnecessary to consider the validity of the reasons advanced by complainant for having failed to list the sought for price line in its original pricing chart.

A final observation remains to be made with respect to the claim of hardship suffered by complainant, which, it is alleged, resulted from the Administrator's order, refusing to allow complainant a price of $2.65 per garment for all blouses manufactured by it. It is said that complainant is being deprived of materials that go into the manufacture of ·its moderately priced dresses, due to the fact that manufacturers whose garment lines were frozen at higher prices than those manufactured by complainant, are buying up most of the available material that could be used by com-

plainant for its dresses. In view of this situation, complainant urges that denial of the right to it to enlarge its operations to include the manufacture of blouses in the $2.65 price line, will work a great financial hardship upon it.

■ In considering this contention, it is to be observed that complainant did not present any evidence aimed at establishing—or which established—proof of the existence of hardship resulting from the refusal of the Administrator to authorize a correction of, or an addition to, its pricing chart. In any event, the standards applied by the Administrator in considering and disposing of such an application as that of complainant does not contemplate a requirement to investigate complainant's financial condition. In this case, hardship to an individual is not an element which governs the right to correction of a pricing chart, under the Regulation. The rule here applicable is that the unreasonableness of the Administrator's order cannot be established by showing of individual hardship on the part of complainant, for the validity of a Regulation must be measured by its effect upon the industry as a whole, rather than upon the individual seller alone. Interwoven Stocking Co. v. Bowles, Em.App., 1941, 141 F.2d 696. Moreover, it is to be observed that no greater hardship, in this regard, is suffered by complainant,—which has not manufactured blouses since the few which it fabricated and sold as samples in March 1942—than by manufacturers of dresses who have also been continuously engaged in the manufacture of blouses, or by manufacturers of dresses who now desire to enter the blouse field for the first time.

In accordance with the foregoing, a judgment will be entered dismissing the complaint of the Fitwell Garment Company.