## PARKLEIGH FASHIONS, Inc. v. PORTER.
### No. 309.

United States Emergency Court of Appeals.;

Heard at New York City, June 12, 1946.

Decided Oct. 22, 1946.

Jacob P. Rosenbaum, of New York City (Solomon, Schein, Hausman & Rosenbaum, of New York City, on the brief), for complainant.

Jacob D. Hyman, of Buffalo, N. Y., Associate General Counsel (Richard H. Field, General Counsel, William R. Ming, Jr., Chief, Court Review Price Branch, and Samuel M. Singer, Atty., all of Washington, D. C., all of Office of Price Administration, on the brief), for respondent.

Before MARIS, Chief Judge, and MAGRUDER and McALLISTER, Judges.

McALLISTER, Judge.

This case is concerned with Revised Maximum Price Regulation 287,[1] and arises out of the denial by the Administrator of a petition for a retroactive order permitting complainant to add a selling price line to its Spring Pricing Chart.

[1] 8 F.R. 9122.

Complainant, a manufacturer of women's apparel, filed an application in February 1945, under Section 14(b) of the above named regulation, asking for permission to include a group of suits priced at $22.75 in the selling price lines as shown by its Spring Pricing Chart. Pricing charts, selling price lines, and the price line provisions under which sellers are authorized to sell garments, are all defined and set forth in Maximum Price Regulation 287,[2] and Revised Maximum Price Regulation 287, already mentioned; and have been heretofore discussed in various cases by this court. See Mevorah v. Bowles, Em.App., 1945, 151 F.2d 766. It may here be observed, however, that prices for women's and misses' coats and suits, and for all other women's, misses', and children's outer apparel are regulated by the revised maximum price regulation above mentioned.

In accordance with the regulation, manufacturers of the above garments are required to file a Spring Pricing Chart, and may also file a Fall Pricing Chart. In the chart, the different kinds of garments are classified in categories, and the prices are listed at which such garments were delivered during the spring base period of March 1942, or the fall base period—from July to November 1942. A manufacturer cannot make a sale during any spring or fall season at a price higher than the highest price for any category set forth in the chart for such seasons. The highest prices at which garments in each category were delivered during the base period, are the "ceiling prices" for all deliveries during the respective subsequent seasons.

Complainant filed a Spring Pricing Chart in 1943, showing certain categories and prices. One of these was "Category No. 7" for suits. The Spring Pricing Chart recited that the highest selling price for a spring suit in that category—or the "selling price line" therefor, was $16.75; the Fall Pricing Chart listed the price for a fall suit in "Category No. 7," as $22.75.

In February 1945, complainant discovered that it had made a mistake in its Spring Pricing Chart, and that it should have included as a listed selling price therein in Category No. 7, spring suits at $22.75—which happened also to be the same price which it had listed for suits in Category No. 7 of its Fall Pricing Chart. Accordingly, on February 10, 1945, complainant filed with the New York Regional Office of Price Administration, a petition to amend its Spring Pricing Chart by adding thereto the selling price line of $22.75 for spring suits in Category No. 7.

Approximately six months later, the Regional Office denied this application on the ground that the garments, delivered by complainant in March 1942, were not "suits," within the meaning of the regulation, but, instead, coats and skirts. Complainant thereafter, on August 6, 1945, filed a protest with the Office of Price Administration, and after the elapse of another six months, on February 1, 1946, the Administrator reversed the order of denial of the Regional Office, and held that the garments which complainant sought to include by amendment in its Spring Pricing Chart as suits in Category No. 7, were, in fact suits within the meaning of that category, and not coats and skirts, and should properly be listed thereunder. He also found that such suits were actually delivered by complainant during the base period at a price of $22.75, and, accordingly, issued an order authorizing complainant to amend its Spring Pricing Chart by adding thereto a selling price line, in Category No. 7, of $22.75 for suits. In other words, the Administrator found in favor of complainant on all the contested allegations, and overruled the action of the Regional Office.

However, complainant had asked that the order authorizing the addition to its Spring Pricing Chart of suits in Category No. 7, at $22.75, be given effect retroactively from the time that complainant had filed its petition to add the category in question to its pricing chart. This, the Administrator denied, and ten days after the filing of his order and decision, an action for treble damages, in accordance with the price control statute, was commenced against complainant for sales at the price finally authorized—which complainant had made be-

---

tween February 14, 1945 and July 1, 1945 (the spring period immediately subsequent to the filing of the application to amend the pricing chart).

Complainant argues that the Administrator should have made his order permitting the addition of the price line, retroactive, and, also that the provision of the regulation which prohibits sales in accordance with an amended pricing chart until acknowledgment and authorization are received by the seller from the Price Administrator, is arbitrary, capricious, and contrary to law.

The Administrator held that the language of Section 14 of the regulation reveals the Administrator's purpose to restrict relief accorded thereunder to prospective relief, and that Section 14(a) "forbids the use of a corrected spring price chart until 'correction thereunder has been authorized, and until the manufacturer has received an acknowledgment from the Office of Price Administration of the receipt of the corrected pricing chart.' " [3]

Complainant seeks relief on the ground that the Price Administrator could have granted retrospective relief; that his interpretation of the regulation was arbitrary, capricious, and incorrect; that, if the interpretation of the Administrator was correct, then the provisions of Section 14 (a) and (b) of the regulation which prohibit use of the Amended Pricing Chart, until acknowledgment and authorization are received by a petitioner, are arbitrary, capricious, and contrary to law.

We have no doubt that in proper cases, the Administrator may grant retrospective relief. In Thomas Paper Stock Company v. Bowles, Em.App., 1945, 148 F.2d 831, 841, this court said that while a protest

---

[3] Section 14(a) and (b) provides: "Section 14 *Amendments to pricing charts*—(a) *Correction of errors.*—Any manufacturer who has filed a pricing chart and then finds that the pricing chart filed was incorrect, may apply to the Office of Price Administration for authorization to correct the errors. Two signed copies of an application for authorization to correct the errors in a pricing chart must be filed with the field office of the Office of Price Administration where the original pricing chart was filed, setting forth the following: (1) Applicant's name and address; (2) Description of the errors which applicant wishes to correct, and the correct entries; (3) Statement of the manner in which the error originally occurred. If authorization is given, it will be accompanied by instructions stating the correct entry to be made on the pricing chart or the method to be followed in calculating the corrected entry. Until such correction has been authorized and until the manufacturer has received an acknowledgment from the Office of Price Administration of receipt of the corrected pricing chart, he may not take a higher maximum allowable margin than those listed in his pricing chart previously filed; nor may he sell in a higher selling price line than those listed in his pricing chart previously filed or those listed in Appendix G (sec. 33), whichever is higher.

"(b) *Addition of prices delivered during March 1942.*—Any manufacturer who, during March, 1942, delivered garments in category numbers covered by MPR 287 prior to June 29, 1943, and who has filed a Spring Pricing Chart, and then finds that the pricing chart does not contain prices at which he actually delivered garments during March 1942, but which are different from 'selling lines' defined in Section 7(a), may apply to the Office of Price Administration for authorization to add such prices to his Spring Pricing Chart. Two signed copies of an application for authorization to add prices to a Spring Pricing Chart must be filed with the field office of the Office of Price Administration where the original Spring Pricing Chart was filed, setting forth the following: (1) Applicant's name and address; (2) A list of the prices which applicant wishes to add to his Spring Pricing Chart; (3) A statement of the reasons why such prices were not listed in a supplement to the pricing chart pursuant to Rule 11 of MPR 287 and filed prior to June 29, 1943; (4) A description of applicant's evidence that garments at such prices were actually delivered by him during March 1942. Until addition of these prices has been authorized and until the manufacturer has received an acknowledgment from the Office of Price Administration of the receipt of his amended Spring Pricing Chart, he may not take a higher maximum allowable margin than those listed on his Spring Pricing Chart previously filed; nor may he sell in a higher selling price line than those listed on his Spring Pricing Chart previously filed or those listed in Appendix G. Sec. 33), whichever is higher."

proceeding must be primarily directed toward securing prospective relief against the provision of the regulation or order alleged to be invalid by its modification or rescission, "the protestant may ask to have that relief made retroactive, and the Administrator may grant his request. If upon such a request the Administrator should refuse to give retroactive relief even though giving relief for the future his action would be a partial denial of the protest which would open the way for the filing of a complaint under Section 204(a) upon which we would be empowered to grant retroactive relief by way of a declaratory judgment. Accordingly in this class of cases retroactive relief may be obtained from the Administrator upon a proper showing in a protest proceeding or, if he denies it, such relief may be obtained from this court in a proceeding under Section 204(a)."

See also Dur-Lite Pencil Co., 1 OPA Op. and Dec. 196, where, in a case in which a protestant sought an upward adjustment in price, the Administrator declared that "most exceptional circumstances" constituted the basis for retroactive relief. See also Universal Sewer Pipe Corp., 4 OPA Op. and Dec. 123, where, in denying retroactive relief, the Administrator stated that, in the absence of any justification for special treatment, price *increases* may apply only prospectively. As contended by complainant, there is implicit in the foregoing the clear inference that even *increases* in prices may be made retroactively on a showing of special circumstances; and, finally, it is conceded by counsel for the Administrator that the regulation did not preclude retroactive price chart amendment upon a showing of "exceptional circumstances." But, in our opinion, this case is not concerned with the power of the Administrator to give retrospective relief in price adjustments or pricing chart amendments, but rather with the matter of the invalidity of the regulation in question.

█ There is no doubt in our mind that the Administrator correctly interpreted Section 14(a) and (b) of the regulation, and because of our view in this regard,

ultimate decision in the case rests upon the determination whether the provisions of Section 14(a) and (b), which prohibit use of an amended pricing chart until acknowledgment and authorization are received, are arbitrary, capricious, and contrary to law.

When Revised Maximum Price Regulation 287 was originally issued, it provided, in so far as here pertinent, that acknowledgment, alone, by the Office of Price Administration of the receipt of an amended chart was sufficient to permit the use of all the price lines contained in such chart, as amended.

Subsequent to the filing by complainant of its original Spring and Fall Pricing Charts in 1943—at a time during which the above regulation was in effect—the Administrator amended the regulation to require not only that the receipt of filing of an amended pricing chart be acknowledged by the Office of Price Administration before it could be used, but also that the price lines set forth in it could not be used until the Office of Price Administration authorized such price lines. Amendment No. 2 to Revised Maximum Price Regulation 287.[4]

Prior to February 1, 1944, the effective date of the foregoing amendment, an amended pricing chart was treated in the same manner as an original pricing chart, and acknowledgment of receipt thereof by the Office of Price Administration was sufficient in itself to render either an original or an amended pricing chart effective.

In giving his reasons why he amended the regulation to require not only acknowledgment of filing, but also authorization to use the price lines set forth in the amended chart, the Administrator, in his Statement of Considerations, declared: "RMPR 287 previously provided that any manufacturer who discovered an error in his pricing chart might file an amended pricing chart with the Office of Price Administration. It is considered that ample opportunity has now been given for the discovery and correction of most errors. Therefore the provision for amendment of pricing charts is modified to limit the right

to make corrections to those cases in which an application has been made to the Office of Price Administration and authorization has been given to correct the error."

It is conceded that investigation and review of requested amendments to pricing charts, with a view to granting or denying authorization, results in delay—often considerable delay—to the disadvantage and injury of manufacturers who are, ultimately, found to be entitled to the price lines in the amended charts. In the present case, that investigation and review lasted for an entire year. This delay could not be attributed to any fault on the part of complainant or the government; it was necessarily incident to long drawn out proceedings, which, by Amendment No. 2, were required *before* complainant was permitted, by the Office of Price Administration, to sell its garments.

When complainant discovered that it had not included its $22.75 price line for spring suits in its spring pricing chart, and thereafter filed the requested amendment, it had on hand a great quantity of suits that were already cut, and in process of final manufacture. Because of changes in styles, that occur so rapidly and to such a marked extent in women's garments—proverbial alike from the days of Ur of the Chaldees, down to the Rue de la Paix, Fifth Avenue, and Main Street—it would doubtlessly have resulted in a most considerable loss to hold these garments off the market until authorization to use the prices had been given at a much later period—in this case, a year subsequent to the filing of the amended chart. Complainant was actually entitled to sell the garments at the prices at which it eventually did sell them, and for which it is now being sued for treble damages, because it did not wait for the delayed authorization by the Administrator.

Prior to February 1, 1944, the regulation provided that amendments could be made to a pricing chart, and that the price lines therein set forth could be used, upon the filing of the pricing chart and receipt of its acknowledgment. No further authorization to sell at the price lines in the amended chart was necessary. Under that regulation, if a price line, added by amendment, were not justified, the manufacturer was subject to the same enforcement actions as any manufacturer who filed an original incorrect pricing chart. There is no more danger that the amended chart would be incorrect or deliberately false, than that the original one is. In fact, it seems reasonable and probable that special scrutiny would more frequently be given to an amended price line than to an original price line. To permit the use of an amended chart, upon acknowledgment of its receipt, preserves to the Office of Price Administration all the strict and rigorous rights and remedies with respect to the amended chart that it had, and has, with respect to an original chart. There seems far less likelihood that the manufacturer would attempt to secure unlawful prices or advantages by an amended pricing chart than he would, by an original chart—for any administrative inquiry would be especially directed and focused upon a claim for a different price than originally set forth. There is nothing in the Statement of Considerations or in the case to suggest that the original provisions of the revised regulation did not sufficiently take care of the problem of price control to which it was directed as well as any prospect or possibility of evasion; and there is no intimation by the Administrator or his counsel that Amendment No. 2 solved any difficulty or problem in regard to price control, its evasion, or its enforcement.

We are of the opinion that the inclusion within the regulation of a requirement that a manufacturer secure authorization to use an amended chart before being permitted to sell at the price lines therein set forth results in unduly harsh and unnecessary burdens and hardships being imposed, and unjustifiable losses being inflicted upon manufacturers of women's garments; and that such a requirement is not necessary for price stabilization, or for the carrying out of any of the purposes of the price control statute. Such a provision adds nothing to the enforcement weapons already in the hands of the Administrator for use against improper, incorrect, or fraudulent price lines in either original or amended charts.

Because of the above considerations, we fail to be impressed with contentions that the provision here in question is authorized by Section 2(g) of the Price Control Act, 50 U.S.C.A.Appendix, § 902(g), which empowers the Administrator to include within regulations such provisions as he deems necessary to prevent circumvention or evasion. It would seem rather that the provision, requiring authorization to sell, was promulgated out of a supposition that it would add to the convenience of administration of the Act, 50 U.S.C.A.Appendix, § 901 et seq.; but this consideration cannot outweigh or balance the resulting hardship, which we have remarked upon. Moreover, it is to be observed that the reasons given by the Administrator in his Statement of Considerations for incorporating the provision, by amendment, in the regulation—that it was considered that ample opportunity had already been given "for the discovery and correction of most errors"—does not justify the imposition of the hardships thereby cast upon the manufacturers here concerned.

In accordance with the foregoing, it is our conclusion that the provision in the regulation that, upon the filing of an amended price chart, authorization to sell at the price lines therein set forth, must be granted by the Office of Price Administration, before sales are permitted at such prices, is arbitrary and capricious, and should be set aside. Having sent in an application which set forth the amendment which it desired to make to its pricing chart, listing categories therein at the same prices at which it delivered garments in similar categories during the base period, complainant was entitled, provided the amendment was actually received by the Office of Price Administration, to sell such garments at the listed prices, without securing special authorization to sell from the Administrator. In this case the Administrator acknowledges that the application setting forth the amendment to the pricing chart was received at the time the complainant asserts that it was sent in to him.

A judgment will, therefore, be entered declaring that the amendment made by Section 6 of amendment No. 2 to Section 14 of Revised Maximum Price Regulation No. 287 is and has been invalid from its effective date, February 1, 1944, to the extent that it requires a seller not to use a corrected or properly amended pricing chart until he has received an Order of authorization from the Office of Price Administration authorizing him to do so; and that Section 14 of Revised Maximum Price Regulation No. 287, as amended by Section 6 of Amendment No. 2 be set aside to the extent that it requires a seller not to use a corrected or properly amended pricing chart until he has received an Order of authorization from the Office of Price Administration authorizing him to do so.